# IN THE COURT OF APPEALS OF IOWA

No. 22-1150
Filed August 31, 2022

**IN THE INTEREST OF L.L.,**
**Minor Child,**

**R.S., Father,**
 Appellant.
_____

 Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District
Associate Judge.

 A father appeals the termination of his parental rights. **AFFIRMED.**

 Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, attorney for
appellant father.

 Thomas J. Miller, Attorney General, and Diane Murphy Smith, Assistant
Attorney General, for appellee State.

 Yvonne Naanep, Des Moines, attorney and guardian ad litem for minor
child.

 Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights. He argues the State has not established a ground for termination and that termination is not in the child's best interests. As we determine the State proved a ground for termination and termination is in the child's best interest, we affirm.

## I.      Background Facts & Proceedings

L.L., born in September 2019, and her mother came to the attention of the Iowa Department of Human Services (DHS) in December 2019 due to the mother's drug use. Initially, DHS allowed the child to remain with the mother and offered the mother services. However, the child was adjudicated a child-in-need-of-assistance (CINA) and formally removed from parental custody in December 2020 after the mother relapsed. The child was placed with a perceived relative.[1] The child remained in that placement throughout these proceedings. The mother's parental rights were terminated in August 2021.[2]

After paternity testing demonstrated that two other men were not a biological parent to L.L., the father took a DNA test. In July 2021, the test established him as L.L.'s biological father. The father has been incarcerated for most of L.L.'s life, most recently since February 2020 for possession of methamphetamine with intent to deliver. His tentative discharge date is August 2026, although he testified that he could be in front of the parole board in March

---

[1] Paternity remained unresolved for some time. The child was placed with a cousin of the man first thought to be L.L.'s father.

[2] The termination of the mother's parental rights was upheld on appeal. *See In re L.L.*, No. 21-1235, 2021 WL 5458466, at *4 (Iowa Ct. App. Nov. 23, 2021).

or April 2022. Upon release, he plans to move to Ottumwa, where the father indicates he has housing and employment.[3]

The father had his parental rights to two other children terminated in 2018. The termination was predicated on the father's incarceration, substance abuse, failure to meaningfully participate in the case plan, and minimal contact with the children.

With respect to L.L., the father's participation in services has been fairly minimal. He testified that he underwent a mental-health evaluation that indicated he had no diagnosis. He completed one class in prison, called "Thinking For a Change." According to the father, the class includes a substance-abuse treatment element. The father testified that service options are limited because he placed himself in protective custody in prison.[4]

Communication between the father and L.L. has been limited. While the father was initially consistent with his weekly phone call, he stopped calling L.L. for roughly five weeks because he was upset he was denied early release from prison. He began calling again after that but quickly stopped calling once again. He testified that he only called L.L. four or five times in total. He explained that the lack of phone calls was due to a lack of funds. He sent L.L. four cards and one letter.

---

[3] The father testified that he would have to live at a half-way house prior to moving to his own residence, similar to his transition from prison to a half-way house in his prior termination-of-parental-rights case.

[4] The father's testimony is the only evidence in the record that a prisoner can place oneself into protective custody while incarcerated. And the father acknowledged he has less access to services due to being in protective custody.

The State petitioned to terminate the father's parental rights on July 27, 2021. The State subsequently amended the petition on August 4 and September 15. The termination hearing was held February 15, 2022, during which the DHS caseworker and the father testified. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (g) (2021). The father appeals.

## II.    Standard of Review

We review the termination of parental rights de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). Our review follows a three-step process. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we must examine whether a ground for termination exists under section 232.116(1). *Id.* Second, we consider whether termination is in the child's best interest. *Id.* Finally, we consider whether an exception found in section 232.116(3) should be used to prevent termination. *Id.*

## III.    Discussion

The father claims the State has not established a statutory ground for termination. He also claims termination is not in the child's best interest.[5]

### A.    Statutory Grounds for Termination

The juvenile court terminated the father's parental rights under section 232.116(1)(b), (e), and (g). When a juvenile court terminates parental rights on

---

[5] To the extent the father attempts to claim the juvenile court should have applied one of the permissive exceptions under section 232.116(3), we decline to consider the claim. The father only tangentially references that code section, does not identify which exception he claims applies, and does not identify the factual basis for such an exception. Such a glancing reference to a claim is insufficient to present it for our review. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). In any event, none of the exceptions are applicable here.

multiple grounds, "we need only find grounds sufficient to terminate under one of the statutory grounds the district court cited" in order to affirm. *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007). For the purposes of this opinion, we focus on section 232.116(1)(g).[6] The father concedes the first two elements of that section are met; he only contests whether there is clear and convincing evidence that he lacks the ability or willingness to respond to services and whether an additional period of time would correct the situation.

Our supreme court recently explained the unique analysis we undertake pursuant to section 232.116(1)(g):

> Iowa Code section 232.116(1)(g) is unique because it is the only ground for termination under [section] 232.116 that requires the juvenile court to find parents have already had their rights terminated to another child who is a member of the same family. It is also the only ground that examines whether a "parent continues to lack the ability or willingness to respond to services," only applying to those parents who continue to repeat their parenting wrongs in spite of the services they've received in both the past and present termination cases. Thus, unlike other grounds for termination, which focus more on the parents' behavior in the case at issue, the juvenile court must specifically examine the parents' past termination cases in deciding whether termination is appropriate under Iowa Code section 232.116(1)(g). The State still retains the burden of proof under section 232.116(1)(g), but the parents' history of past terminations— especially when those terminations were under similar

---

[6] That section provides for termination when:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

circumstances—is highly relevant in proving the parents lack the ability or willingness to respond to services.

*In re J.H.*, 952 N.W.2d 157, 166-67 (Iowa 2020) (internal citations omitted).

The father's prior termination-of-parental-rights case is remarkably similar to the present case. Despite initial success, the father was inconsistent with visiting his children, ultimately foregoing visits altogether. Similarly, while the father was initially committed to phone visits with L.L., he stopped for roughly five weeks, began again, quit again, and has not reengaged with visits since. He struggled with his addiction to methamphetamine in his first case. The father is currently incarcerated for possession of methamphetamine with intent to distribute. After relapsing during the first termination proceedings, he did not engage in services. Nor has the father meaningfully engaged in services in this case. He has only participated in a single class while in prison. The court in the first termination proceeding indicated that the father struggled with coping skills. That issue remains evident, particularly given the father completely abandoning opportunities to visit with his daughter because he was angry he was not granted early release. The similarities between this case and the father's prior termination are telling, and they indicate that he is unwilling or unable to utilize services to address his problems.

Little suggests that additional time would rectify the situation.[7] The father claims that he will be able to do what he could not in the prior termination and learn

---

[7] The father argues on appeal that, "At a minimum, the Juvenile Court should have given the father a six-month extension to demonstrate his willingness and ability to participate in services and to be successful." To the extent the father argues the court should have granted an extension of time pursuant to Iowa Code section 232.104(2)(b), we reject that argument.

how to parent because he is willing to move to Ottumwa and away from negative influences upon being discharged from prison. While such plans are commendable, they are hypothetical, as is his ability to parent. First, nothing guarantees the father will be discharged in March, as he claimed he would be at the termination hearing. Indeed, his tentative discharge date is not until 2026, and he was denied early release due to a "major report" caused by behavioral problems. Even if he were to be released when he claims, he only completed one program while incarcerated. Despite knowing that termination proceedings were pending, he ceased contact with L.L. for an extended period of time. And questions remain over his ability to maintain his sobriety, as his relapse in the prior termination demonstrates. Continued efforts are unlikely to correct the situation. The State provided clear and convincing evidence to support termination under section 232.116(1)(g).

### B.    Best Interest of the Child

The father claims termination is not in the child's best interest. When considering this issue, we "give primary consideration to the child's safety, to the

---

Under Iowa Code section 232.104(2)(b), a court may refrain from terminating a parent-child relationship and continue the current placement of the child for an additional six months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." In order to grant such an extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" providing the basis for its decision. Iowa Code § 232.104(2)(b). We review a court's refusal to grant a six-month extension de novo. *In re S.J.*, No. 20-0214, 2020 WL 1881119, at *1 (Iowa Ct. App. Apr. 15, 2020).

The father had the opportunity to demonstrate such willingness during the case. He failed to do so. For the reasons stated herein, an extension is not appropriate, in that we are unable to find the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also consider the child's integration into the foster family. *Id.* § 232.116(2)(b).

The father claims, "It would have been in this child's best interest to allow her father an opportunity to be the father that he wanted to be." However,

> [c]hildren simply cannot wait for responsible parenting. While we recognize the law requires a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills, Iowa has built this patience into the statutory scheme of Iowa Code chapter 232. The legislature carefully constructed this time frame to balance the parent's efforts toward reunification and the child's best interests.

*J.H.*, 952 N.W.2d at 171 (internal quotations and citations omitted). After a ground for termination has been established, "termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

The father conceded at trial that L.L. does not recognize his voice and probably does not know who he is. Even when he knew termination proceedings were pending, the father failed to consistently engage in phone calls with the child. And as described above, concerns remain over the father's ability to maintain his sobriety and safely parent given his lack of involvement in services in the prior and instant case. Moreover, the father may not be discharged from prison until 2026. L.L. is doing well in her current placement, which is willing to adopt. *See* Iowa Code § 232.116(2)(b). Termination is in the child's best interests.

**AFFIRMED.**